IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SAMMY WOODS, § | |
| TDCJ-CID NO.903162, § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION H-11-2485 |
| § | |
| DOCTOR JAMES SMITH, *et al.*, § | |
| Defendants. § | |

OPINION ON DISMISSAL

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, in which he complains that defendants have been deliberately indifferent to his serious medical needs. (Docket Entry No.1). Defendants Dr. James Smith, Nurse Christina Huff, and Dr. Dickie Rychetsky have filed a Motion for Summary Judgment. (Docket Entry No.28). Plaintiff has responded to the motion. (Docket Entries No.34, No.36, No.44). Plaintiff has filed a motion for summary judgment (Docket Entry No.31), in which he asks the Court not to seal his medical records, to which defendants have filed a response and a supplemental response. (Docket Entries No.38, No.39).

After a thorough review of the record and the applicable law, the Court will grant defendants' Motion for Summary Judgment and dismiss this case with prejudice.

I. BACKGROUND

Plaintiff claims the following events gave rise to the present complaint: On December 15, 2010, Dr. James Smith accused him of not taking his seizure medication.[1] (Docket Entries No.1, page 4; No.12, page 1). Plaintiff protested that the blood work would

---

[1] Plaintiff speculates that the lab technician who drew the blood got his sample mixed up with another inmate's blood sample. (Docket Entry No.12, page 1). He claims he tried to tell Smith that the technician, who was a student, mixed his sample with another inmate's but Smith was on the phone and would not listen to him. (Docket Entry No.31, page 2).

1

show that he had taken the medication. (*Id.*). Without checking the lab report showing his blood work, Dr. Smith prescribed an additional 100 mg of the medication and instructed plaintiff to come to medical for thirty days, take 500 mg of the medication daily, and sign a log book noting that he had taken the medication; Smith threatened to write him up if he refused. (*Id.*). While Dr. Smith was on the phone with his wife, Nurse Christina Huff told Smith to "do [him] like sixty days at a time" because "there can't be medical unsign [sic] there." (Docket Entries No.1, page 4; No.12, page 1; No.31, page 1). Smith also changed another medication that plaintiff had been prescribed. (Docket Entry No.12, pages 1-2).

After taking the extra dosage, plaintiff walked around in a daze and fell down. (Docket Entries No.1, page 10). His mouth, teeth, and gums bled every night in his sleep. (*Id.*, page 6). His breath smelled bad and he had to have teeth pulled. (*Id.*, page 8). On January 25, 2011, plaintiff filed a Step 1 grievance complaining about the over-medication. (Docket Entry No.1, pages 6-7).

At the appointment with Dr. Smith on January 26, 2011, plaintiff confronted Smith about overmedicating him and Smith expressed disbelief. (Docket Entry No.12, page 2). Plaintiff claims that Smith kept saying, "why would I do that?" (*Id.*). A nurse assured Smith that he changed the prescription. (*Id.*).

On January 27, 2011, Dentist Rychetsky instructed him to stop brushing his teeth and to rinse with a prescribed oral rinse. (Docket Entries No.1, page 10; No.12, page 2). Plaintiff did not receive the rinse at the pill window; after a month, plaintiff filed a grievance. (Docket Entry No.12, page 2). Plaintiff claims that he has been trying for ten months to get treatment for his gums and teeth; he claims that he has been told different things but not given the proper treatment. (*Id.*, page 3).

On April 11, 2011, Dr. Smith called him back. Nurse Huff told plaintiff to tell Smith what plaintiff had been saying; when Huff left the room, plaintiff asked if he could shut the door and Smith said yes. (Docket Entry No.12, page 2). Huff returned and told Smith to be quiet; she had other staff remove plaintiff. (*Id.*). Thereafter, someone harassed plaintiff and told him not to talk. (*Id.*).

Based on the foregoing, plaintiff contends that that defendants Smith, Huff, and Rychetsky were deliberately indifferent to his serious medical needs.

Defendants move for summary judgment on the following grounds:

1. Plaintiff has failed to exhaust his administrative remedies against defendants as required by 42 U.S.C. § 1997e(a); and,

2. They are entitled to Eleventh Amendment immunity and qualified immunity.

(Docket Entry No.28).

### III. DISCUSSION

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground

supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## A. Exhaustion of Administrative Remedies

Defendants contend that plaintiff has failed to exhaust his administrative remedies before filing the present suit. (Docket Entry No.28). Section 1997e(a) of 42 United States Code, as amended by the Prison Litigation Reform Act, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is mandatory. *Booth*, 532 U.S. at 739. Consistent with Supreme Court precedent, the Fifth Circuit has also mandated that a prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

TDCJ-CID currently provides for a two-step grievance procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999). A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired. *Id.* Compliance with the first step of an administrative grievance procedure will not suffice to exhaust administrative remedies if the grievance procedure contemplates additional steps. *See Wright,* 260 F.3d at 358.

The Prison Litigation Reform Act (PLRA) does not specify who must be named in a prison grievance in order to properly exhaust the prison grievance system. *Jones v. Bock*, 549 U.S. 199, 217–218 (2007). Instead, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 923. The primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. *Johnson*, 385 F.3d at 522. "But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem." *Id.* The specificity of detail and information required depends on the type and nature of the complained-of problem and the type of information TDCJ rules request. *Id*. at 517.

The record reflects that plaintiff gave sufficient information to prison officials in Grievance No.2011088746 to investigate a claim against defendant Dr. James Smith even though he did not name Smith in the grievance. In his Step 1 Grievance filed on January 25, 2011, against the UTMB medical department, plaintiff complained of the events that led to the medication changes and of the condition of his gums and teeth. (Docket Entry No.30-8, page 11). The information he provided, however, was sufficient to initiate review of plaintiff's medical records; consequently, the grievance investigator responded on February 28, 2011, with accurate information about plaintiff's treatment and condition. (*Id.*, page 12). The investigator noted that plaintiff would be referred by the medical department for further work for his periodontal disease. (*Id.*). In his Step 2 Grievance, filed on March 4, 2011, plaintiff complained about the doctor who allegedly over-prescribed medication and the UTMB medical department but he did not name names. (*Id.*, page 9). In response, Program Administrator Guy Smith

acknowledged that plaintiff had filed a complaint against the doctor and responded with information regarding plaintiff's care and treatment plan. (*Id.*, page 10).

The record, however, does not reflect that plaintiff gave prison officials sufficient information to investigate his claims against Nurse Huff or Dentist Rychetsky in Grievance No.2011088746. Plaintiff alleged no facts in either grievance that would have alerted prison officials that plaintiff had a problem with Huff or Rychetsky.

Likewise, the Court finds that plaintiff did not provide prison officials with sufficient information to investigate his claims against Dentist Rychetsky in Grievance No.2011123126. In his Step 1 Grievance filed on March 18, 2011, plaintiff complained that he was supposed to be sent to dental to try to heal his gums and that he was instructed to use a rinse instead of brushing his teeth but he never received the rinse.[2] (*Id.*, page 7). In a response dated April 6, 2011, the grievance investigator noted that plaintiff had been referred to dental on February 25, 2011, for additional evaluation and that he was seen in dental on March 3, 2011, where he was given the rinse and instruction on oral hygiene. (*Id.*, page 8). The investigator noted that plaintiff was seen in the dental clinic on April 1, 2011, but was escorted out after becoming aggressive. (*Id.*). The investigator indicated that the treatment plan called for him to be treated by a periodontist. (*Id.*).

In his Step 2 Grievance filed on April 13, 2011, plaintiff complained that he did not get the rinse and was not seen within the two-week period promised; he claimed that after he filed the Step 1 Grievance, he was called to the dental clinic. (*Id.*, page 5). Plaintiff did not name the dentist who examined him; instead, plaintiff attempted to explain why he became aggressive with the dentist; he accused the dentist of making up "things." (*Id.*). Plaintiff

---

[2] The record shows that a nurse practitioner prescribed the rinse and instructed plaintiff on oral hygiene on January 27, 2011. (Docket Entries No.30-1, page 4;No.30-2, pages 89, 127; No.30-5, page 100).

indicated that his gums and teeth were infected and that he might have to have surgery; he complained that "when we say we hurt they won't believe use [sic]; he [sic] only pull teeth and cap them[. H]e did not no [sic] what to do." (*Id.*). Program Administrator Guy Smith responded on May 23, 2011, that plaintiff had failed "to provide specific dates and/or information and to file unresolved grievable issues within 15 days of the alleged incident." (*Id.*, page 6). Smith added, "It is not the responsibility of this office to review the medical record to determine the date you are grieving." (*Id.*). Consequently, Smith did not address the substance of plaintiff's claims.

Further, plaintiff did not exhaust his claims against Nurse Huff in an unnumbered and unprocessed Step 1 Grievance, filed on May 23, 2011, after he had been transferred to the Stiles Unit. In such grievance, plaintiff stated that Nurse Huff and another person told him to go to the infirmary, sign a log-book, and receive his medication. (Docket Entry No.30-8, page 3). The grievance was found to be redundant and was not processed. (*Id.*, page 7).

Because plaintiff has failed to exhaust his claims against defendants Nurse Christina Huff and Dr. Dickie Rychetsky, his claims against these defendants are subject to dismissal for non-exhaustion.

### B. Sovereign Immunity

Defendants rightly contend that they are entitled to Eleventh Amendment immunity for claims against them in their official capacity under § 1983. Congress has not waived sovereign immunity for § 1983 suits. *Quern v. Jordan*, 440 U.S. 332, 340–45 (1979); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (noting that "neither a state nor its official acting in their official capacities are 'persons' under § 1983"). Defendants are employed as health care providers by UTMB; UTMB is a state agency, immune from a suit for money

damages under the Eleventh Amendment. *Lewis v. University of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011). Therefore, all claims for monetary damages against defendants Smith, Huff, and Rychetsky, in their official capacities, are subject to dismissal.

### C. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity on plaintiff's claims of deliberate indifference to his serious medical needs. (Docket Entry No.28). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 199-200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. *Id*. The

deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id*. at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002).

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id*. Assertions of inadvertent failure to provide medical care or negligent diagnosis, however, are insufficient to state a claim. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

Moreover, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838. An incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met. *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citation omitted). The same is true regarding the decision to treat an inmate in the Unit's medical department rather than to send him to outside medical providers or specialists. *See Alfred v. Texas Department of Criminal Justice*, 80 Fed. App'x 926, 927–28 (5th Cir. 2003). The question of whether "additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107; *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Furthermore, an inmate does not have a constitutional right to the treatment of his choice. *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1150 (5th Cir.), *vacated in part as moot*, 688 F.2d 266 (5th Cir. 1982)). Mere disagreement with prison medical providers about what constitutes appropriate care does not rise to the level of a constitutional violation. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *see also Smith v. Allen*, 288 Fed. App'x 938 (5th Cir. 2008) (disagreement about treatment for shoulder injury).

Plaintiff claims that Dr. Smith increased the dosage of medication to an unsafe level without reviewing plaintiff's blood work. Plaintiff alleges that Dr. Smith was on the phone with his wife and ignored plaintiff's protests regarding the increased dosage. Plaintiff claims that while taking the increased dosage, he walked around in a daze and fell down, suffering bleeding gums and bad breath. He also claims that as a result of the fall he had to have teeth pulled. Plaintiff claims that as a result of the overdose, he has difficulty walking, gets dizzy, and has body shakes. (Docket Entry No.12, page 3).

Dr. Steven Bowers, defendants' expert, attests that a review of plaintiff's medical records shows that plaintiff entered prison with a history of several chronic medical conditions, including seizures and periodontal disease. (Docket Entry No. 30-1, page 3). During intake on July 27, 2010, he was placed on seizure medication once a day. (Docket Entry No. 30-1, page 3). Blood work in August and September 2010 showed that the medication levels were within the therapeutic range. (Docket Entry No. 30-1, page 3).

Plaintiff's medical records show that plaintiff's blood was drawn and the results of the testing were reported to medical personnel in the infirmary shortly before plaintiff was seen by Dr. Smith on December 15, 2010. (Docket Entries No. 30-1, page 3; No.30-4, page 37).

The report showed that plaintiff's seizure medication level had declined to a critical level. (Docket Entry No.30-4, page 37). Smith also noted the results of the lab report and that plaintiff's seizure disorder was uncontrolled. (Docket Entry No.30-2, page 96). Smith increased the medication by 100 mg a day and ordered delivery of the medication by direct observational therapy ("DOT"). (*Id.*). He scheduled plaintiff to be medically unassigned for sixty days and scheduled a re-evaluation of the medication levels in thirty days. (*Id.*). Defendants' expert, Dr. Bowers opines that Dr. Smith's decision to increase the medication dosage was correct because the risk of seizure was a greater medical concern than the temporary increase in plaintiff's gum condition. (Docket Entry No.20-1, page 5).

Follow-up blood testing on January 18, 2011, showed that plaintiff's medication levels were elevated. (Docket Entries No.30-1, page 4; No.30-4, pate 21; No.30-5, page 109). A nurse practitioner placed a three-day hold on the medication. (Docket Entries No.30-1, page 4; No.30-5, page 109). Testing on January 21, 2011, showed that the medication level was still elevated but falling. (Docket Entries No.30-1, page 4; No.30-5, page 107). Medication was withheld until plaintiff's next appointment with Dr. Smith. (*Id.*).

On January 26, 2011, plaintiff was seen by Dr. Smith for a reevaluation of the seizure medication dosing. (Docket Entries No.30-1, page 4; No.30-2, page 91). Dr. Smith noted that the medication dosage had been increased when plaintiff's medication level was low and withheld when elevated. (Docket Entries No.30-1, page 4; No.30-2, page 91). Smith set plaintiff's dosage at 400 mg because his level was within the therapeutic range. (Docket Entries No.30-1, page 4; No.30-2, page 92).

Plaintiff presents no evidence to contravene his medical records, which show that his blood was drawn and the results of the testing reported before his appointment with Dr.

11

Smith. He also fails to contravene Dr. Bower's expert opinion that Dr. Smith's actions were correct under the circumstances.

Plaintiff's medical records do not show that he was seen by Dr. Smith on April 11, 2011. The records show that plaintiff was seen by a nurse practitioner on April 15, 2011, who noted that his blood levels were ok but he was still complaining of some dizziness, among other complaints. (Docket Entry No.30-2, pages 86-87). Dr. Bowers attests, without contravention, that the medical records show that plaintiff had complained of dizziness prior to the increased dosage of medication on at least three occasions in September, November, and December 2010, but plaintiff did not complain to medical personnel of feeling drugged, dizzy, or falling down from the time the medication was increased on December 15, 2010 through January 17, 2010, when he took his last elevated dose. (Docket Entry No.30-1, page 4). Bowers opines that plaintiff's complaint of dizziness on January 31, 2011, would not be related to the increase in medication because his medication levels were down by that time. (*Id.*).

Plaintiff's complaints about Dr. Smith's tone and demeanor in accusing plaintiff of not taking his medication, Smith's distraction by a telephone call from his wife and Nurse Huff's directives, belie a record that shows that Smith's actions were reasonably based on the information before him and that his intent was to address a serious medical condition and not to create one. Plaintiff's allegation that Smith expressed later disbelief does not give rise to a finding that Smith was deliberately indifferent to plaintiff's serious medical need. Even if Smith had acted in the manner alleged by plaintiff, his actions would amount to nothing more than negligence, which is not actionable in § 1983 cases.

Accordingly, defendant Smith is entitled to qualified immunity.

D. Other Pending Motions

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104-191, 110 Stat.1936 (1996) (codified primarily in Titles 18, 26 and 42 of the United States Code) generally provides for confidentiality of medical records. 42 U.S.C. §§ 1320d-1 to d-7. *See Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006). In light of this law, defendants moved to seal plaintiff's medical records when they filed their motion for summary judgment. (Docket Entry No.29). Plaintiff, however, filed a motion for summary judgment, requesting the Court not to seal such documents, presumably under a mistaken belief that sealing the documents would allow defendants to hide information. (Docket Entry No.31). Nevertheless, on April 11, 2012, the Court granted defendants' motion to seal exhibits containing or discussing plaintiff's medical records. (Docket Entry No.33). Because the Court has already sealed such documents, plaintiff's motion for summary judgment (Docket Entry No.31) will be denied, as moot. Likewise, his "Motion for Reconsideration on Seal Medical Record" (Docket Entry No.35) will also be denied.

Defendants have also moved to seal documents found in Exhibit 1 to the supplement to their response to plaintiff's motion docketed as No.31. (Docket Entry No.40). Plaintiff again has filed a motion to unseal such records. (Docket Entry No.42). In light of HIPPA, the Court will grant defendants' motion to seal and deny plaintiff's motion to unseal such records.

Likewise, the Court will deny plaintiff's motions for the appointment of counsel. (Docket Entries No.32, No.46). A civil rights complainant has no right to the automatic appointment of counsel. *Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982) (per curiam). A district court is not required to appoint counsel for an indigent plaintiff asserting a claim under 42 U.S.C.

§ 1983 unless the case presents exceptional circumstances. *Id*. at 266. A district court has the discretion to appoint counsel if doing so would advance the proper administration of justice. 28 U.S.C. § 1915(d); *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982).

The Court considers a number of factors in determining whether to appoint counsel, including the following: (1) the type and complexity of the case; (2) whether the indigent was capable of presenting his case adequately; (3) whether the indigent was in a position to investigate the case; and (4) whether the evidence would consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination. *Id.* The Court finds, in this case, that plaintiff's complaint is not particularly complex and plaintiff has proven capable of self-representation. Plaintiff's pleadings adequately advance his claims and the evidence consists of institutional grievances and medical records.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Defendant's motion to seal records (Docket Entry No.40) is GRANTED.

2. Plaintiff's motion for summary judgment (Docket Entry No.31) is DENIED, AS MOOT.

3. Plaintiff's motion for reconsideration on sealing medical records (Docket Entry No.35) and his amended motion on sealing records (Docket Entry No.42) are DENIED.

4. Plaintiff's motions for the appointment of counsel (Docket Entries No.32, No.46) are DENIED.

5. Defendants' Motion for Summary Judgment (Docket Entry No.28) is GRANTED. All claims against defendants Dr. Dickie Rychetsky, Dr. James Smith, and Nurse Christina Huff are DENIED and this civil rights action is DISMISSED WITH PREJUDICE.

6.	All other pending motions are DENIED.

The Clerk shall provide a copy of this Order to the parties.

SIGNED at Houston, Texas, this 20th day of February, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE